IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VICTOR CRISTEA and<br>JENNIFER CRISTEA, individually<br>And as natural tutors of their minor son,<br>G.C.<br>    Plaintiffs | CIVIL ACTION NO. 2:23-cv-02768 |
| VERSUS | JUDGE GREG GERARD GUIDRY |
| ARBORPRO, INC.<br>THE CITY OF NEW ORLEANS<br>BAYOU TREE SERVICE, INC.<br>SMITH CONSTRUCTION COMPANY,<br>and HUDSON INSURANCE COMPANY<br>    Defendants | MAGISTRATE JUDGE MICHAEL NORTH |

**ORDER AND REASONS**

The Court has before it Plaintiffs Victor and Jennifer Cristea's (collectively "Plaintiffs") Motion to Remand this matter back to Louisiana state court. R. Doc. 11. Defendants Bayou Tree Service, Inc. ("Bayou") and ArborPro, Inc. ("ArborPro") have responded in opposition, R. Docs. 22; 24, and Plaintiffs have submitted a reply brief, R. Doc. 28. Having considered the parties' briefing and the applicable law and facts, the Court will DENY Plaintiffs' motion.

**I.    BACKGROUND**

This matter arises as a result of tragic and critical injuries sustained by a child when a large limb broke away from an oak tree and fell, crushing him. On July 7, 2023, Plaintiffs and their two children, a Texas family visiting New Orleans, were sitting on a bench under an oak tree in Jackson Square when the tree limb fell, striking the child, hereinafter referred to as G.C.  R. Doc. 2-1 at 1–2; 10. G.C. remains hospitalized in a coma and his future is uncertain. R. Doc. 11-1 at 3. Plaintiffs

brought this suit individually and as natural tutors of G.C., alleging that the City of New Orleans, Bayou, ArborPro, and other defendants are liable for G.C.'s injuries, as well as Plaintiffs' emotional distress and loss of consortium. *Id.* at 10–12.

Plaintiffs originally filed their suit in the Civil District Court for the Parish of Orleans, Louisiana. *Id.* at 1. However, before Plaintiffs were able to serve their complaint upon it, Bayou, a Louisiana corporation, removed the case to this Court. R. Doc. 2. Plaintiffs now seek remand back to state court, arguing that Bayou's removal violated the Forum Defendant Rule. R. Doc. 11.

## II.   LAW AND ANALYSIS

Except where expressly prohibited by Congress, 28 U.S.C. § 1441 allows a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" However, § 1441(b)(2) provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." This provision is referred to as the Forum Defendant Rule and means that, generally, cases in which any defendant is a citizen of the forum state are not removable based on diversity jurisdiction.

However, the United States Court of Appeals for the Fifth Circuit, as well as other circuits, has interpreted the Forum Defendant Rule to mean also that a civil action removable solely on the basis of diversity jurisdiction may indeed be removed, even if one or more defendants is a citizen of the state in which the action was brought, provided that no home-state defendant, or "forum" defendant, has already been "properly joined and served[.]" 28 U.S.C. § 1441(b)(2); *see also Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020) ("Section 1441(b)(2) is

2

inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action.") (quoting *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) (approving snap removal by a forum defendant)); *Encompass Insurance Company v. Stone Mansion Restaurant Incorporated*, 902 F.3d 147, 151–52 (3rd Cir. 2018) (same); *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001), *amended on denial of reh'g*, 250 F.3d 997 (6th Cir. 2001) (approving snap removal in dicta); *but see also Woods v. Ross Dress for Less, Inc.*, 833 Fed. Appx. 754, 756 (10th Cir. 2021) (unpublished) (rejecting snap removal). Removal of this type has been dubbed "snap removal." *See, e.g.*, *Breitweiser v. Chesapeake Energy Corp.*, 2015 WL 6322625, at *2 n.5 (N.D. Tex. Oct. 20, 2015).

The parties in this case do not dispute that this matter is removable on the basis of diversity, nor that Bayou removed this suit to federal court before it, or any other forum defendant, had been served. However, Plaintiffs claim that Bayou's snap removal was nonetheless impermissible because Bayou is itself a forum defendant. *See* R. Doc. 11-1 at 4–17. Plaintiffs make several arguments in support of this claim, which can be boiled down to two assertions. First, Plaintiffs argue that, although the Fifth Circuit has not explicitly ruled on the issue, case law from that and other courts indicates that snap removal by a forum defendant is impermissible. Second, Plaintiffs argue that interpreting § 1441(b)(2) to permit snap removal by a forum defendant would be contrary to the legislative intent of the statute, and would thus produce an absurd result. The Court will discuss each argument in turn.

    **A. Case Law**

Plaintiffs rely heavily on the Fifth Circuit's most recent opinion discussing snap removal, *In re Levy*, in support of their argument that snap removal by a forum defendant is impermissible.

52 F.4th 244 (5th Cir. 2022). In *Levy*, the plaintiff, a citizen of Louisiana, filed suit in Louisiana state court against three defendants, one also a citizen of Louisiana and two diverse. *Id.* at 246. Before the Louisiana defendant could be served, a diverse defendant removed the case to federal court. *Id.* In opposition to the plaintiff's motion to remand, the defendants argued that removal was proper under *Texas Brine* because no forum plaintiff had yet been served. *Id.* The district court agreed and denied the motion to remand. *Id.* However, on petition for writ of mandamus by the plaintiff, the Fifth Circuit disagreed, rejecting the defendants' arguments based on snap removal as "inapposite." *Id.* at 247. The court explained that "snap removal is a term of art used to describe a defendant's proper invocation of § 1441(b)(2) to remove an action before a named co-defendant, who is a citizen of the forum, has been served." *Id.* But, "the forum-defendant rule is a procedural rule, not a jurisdictional one." *Id.* (citing *Texas Brine*, 955 F.3d at 485). As a procedural rule, the Forum Defendant Rule "cannot confer jurisdiction where jurisdiction does not exist." *Id.* That is, as the *Levy* court explained, *Texas Brine*'s holding that the Forum Defendant Rule permits snap removal until a home-state defendant has been served was "inapplicable [in *Levy*], because . . . complete diversity [was] wanting." *Id.* at 248. In the absence of complete diversity, a federal court cannot assert diversity jurisdiction over a dispute. *See, e.g.*, *Strawbridge v. Curtiss*, 2 L. Ed. 435 (1806). Thus, the Forum Defendant Rule and any arguments based on snap removal were inapplicable in *Levy*, and remand was necessary, because "[c]omplete diversity is still required [for removal based on diversity jurisdiction] even if one or more defendants have not been served; citizenship is what counts." *Id.* At base, this was the Fifth Circuit's only holding in *Levy*, which had been long established before that case: Diversity jurisdiction requires *complete* diversity.

Although snap removal was ultimately irrelevant to the Fifth Circuit's holding in *Levy*, Plaintiffs rely on that court's dictum definition of snap removal to argue that *Levy* should be read

4

to preclude snap removal by a forum defendant. R. Doc. 11 at 4–6. They assert that the *Levy* court's description of snap removal as "a defendant's proper invocation of § 1441(b)(2) to remove an action before a named co-defendant, who is a citizen of the forum, has been served" indicates that the Fifth Circuit would limit snap removal to *only* removal by a non-forum defendant before a *different* defendant, who is a forum defendant, has been served. *Id*. (quoting *Levy*, 52 F.4th at 247). However, even if this definition were not dictum, Plaintiffs' asserted interpretation is not what the Fifth Circuit actually stated. As Bayou points out, the facts of this case plainly fit within the Fifth Circuit's definition of proper snap removal: "A snap removal is a term of art used to describe a defendant's [here, Bayou's] proper invocation of § 1441(b)(2) to remove an action before a named co-defendant, who is a citizen of the forum [here, City of New Orleans, or Smith Construction], has been served." R. Doc. 22 at 7 (quoting *Levy*, 52 F.4th at 247). Thus, *Levy* does not support Plaintiffs' argument that Bayou's snap removal of this matter was impermissible.

On the other hand, the Fifth Circuit has cited approvingly to cases from other circuits that expressly endorsed snap removal by forum defendants. In *Texas Brine*, that court considered snap removal by a non-forum defendant, but quoted directly from the Second Circuit's opinion in *Gibbons*, which had approved snap removal by a *forum* defendant, for its holding that snap removal was permitted by the plain text of § 1441(b)(2): "We agree with a comment made by the Second Circuit: 'By its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action.'" 955 F.3d at 486 (quoting *Gibbons*, 919 F.3d at 705). The *Texas Brine* court also cited approvingly to the Third Circuit's opinion in *Encompass Insurance Company*, which similarly considered snap removal by a forum defendant and concluded that the unambiguous "plain meaning [of § 1441(b)(2)] precludes

5

removal on the basis of in-state citizenship *only* when the [in-state] defendant has been properly joined and served." 902 F.3d at 152 (emphasis added); *see also Texas Brine*, 955 F.3d at 487 (citing *id.* at 153). Thus, contrary to Plaintiffs' assertion, "the Fifth Circuit's rationale and holding in *Texas Brine*,"—that is, that a plain textual reading of § 1441(b)(2) confirms the Forum Defendant Rule to be inapplicable until a forum defendant has been properly served—"as well its citation and reliance on cases that expressly permitted snap removal by forum defendants, strongly impl[y] that the Fifth Circuit would endorse snap removal by forum defendants if such question were presented to it." R. Doc. 22 at 9.

Bayou also cites to several cases from district courts within the Fifth Circuit that have approved snap removal by a forum defendant for the reasons it argues here. *See Chastain v. New Orleans Paddlewheels, Inc.*, 2021 WL 5578443, at *5 (E.D. La. Nov. 30, 2021) (allowing snap removal by forum defendant); *Baele v. Univ. Healthcare Sys., L.C.*, 2023 WL 4882818, at *2 (E.D. La. Aug. 1, 2023) (same); *Miller v. Miller*, No. 22-cv-335, 2022 WL 1397721, at *2 (W.D. La. Apr. 11, 2022) (same); *Hvamstad v. Nat'l Interstate Ins. Co.*, 2022 WL 17086690, at *2–3 (W.D. La. Nov. 3, 2022) (same); *Latex Construction Company v. Nexus Gas Transmission, LLC*, 2020 WL 3962247 (S.D. Tex. July 13, 2020) (same); *Serafini v. Southwest Airlines Co.*, 485 F. Supp. 3d 697 (N.D. Tex. 2020) (same); *Baker v. Bell Textron, Inc.*, 2021 WL 1377372, at *4 (N.D. Tex. Apr. 12, 2021) (same); *Mirman Group, LLC v. Michaels Stores Procurement Company, Inc.*, 2020 WL 5645217 (N.D. Tex. Sep. 22, 2020) (same). In contrast, Plaintiffs do not cite a single in-circuit case which has explicitly held snap removal by a forum defendant to be impermissible. Plaintiffs point to *Leech v. 3M Company*, in which another section of this Court, while considering a snap removal by a *non-forum* defendant, noted in dicta that snap removal by a forum defendant "likely qualif[ies] as absurd." 278 F. Supp. 3d 933, 943 (E.D. La. 2017) (citing *Breitweiser,* 2015 WL

6

6322625 at *6) (finding, in dicta, that "allowing a forum defendant to engage in snap removal reaches an untenable result"). However, even if that statement were not dictum, *Leech* predated *Texas Brine*, and thus was decided without the benefit of the Fifth Circuit's holding in that case—in reliance on the Second and Third Circuit's approval of snap removal by a forum defendant in *Gibbons* and *Encompass Insurance Company*—that, by the plain text of § 1441(b)(2), the Forum Defendant Rule is inapplicable until a forum defendant has been properly served. *See Texas Brine*, 955 F.3d at 486. Plaintiffs also argue that "years of precedent from the District Courts throughout Louisiana [have] assumed as a basic premise that only non-forum defendants could take advantage of the snap removal process[,]" citing to various cases in the Eastern and Western Districts of Louisiana that describe snap removal as removal by a "non-forum defendant." R. Doc. 11 at 15–16 (*citing Henry v. Clarkson*, 2020 WL 16 7245065, *1 (E.D. La. 12/9/2020); *Levy v. Zurich American Ins. Co.*, 2022 WL 4605615 (E.D. La. 9/30/2022); *Coleman v. Lowe's Home Centers, LLC*, 2021 WL 1115579, *4 (W.D. La. 3/5/2021); *Raines v. Boone*, 2022 WL 2427550, *3 (W.D. La. 3/14/2022)). But none of those cases considered or even addressed snap removal by a forum defendant, and certainly cannot be read to hold that snap removal is exclusively limited to non-forum defendants. Thus, there is a wealth of persuasive authority within the Fifth Circuit holding or indicating that snap removal by a forum defendant is permissible, and very little indicating otherwise.

Plaintiffs argue that the cases out of the Eastern and Western Districts of Louisiana approving snap removal by a forum defendant are distinguishable from the instant case and encourage this Court to disregard them. *See* R. Doc. 28 at 1–4 (discussing *Baele*, 2023 WL 4882818; *Miller*, 2022 WL 139772; *Hvamstad*, 2022 WL 17086690; and *Chastain* 2021 WL 5578443). They assert that (1) none of these cases considered the Fifth Circuit's opinion in *Levy*,

7

52 F.4th 244; (2) none of these cases considered whether snap removal by a forum defendant was an absurd result; and (3) none of these cases considered "whether the legislative intent of the 1948 amendment to 28 U.S. Code §1442 was to create a vehicle for forum defendants to remove actions that were previously not removable[.]" *Id.* at 3–4. The Court has already rejected Plaintiffs' argument that *Levy* indicates the Fifth Circuit's disapproval of snap removal by a forum defendant; thus, the fact that those cases do not mention *Levy* does not render their approval of snap removal by a forum defendant any less persuasive. Therefore, to determine the persuasive value of the cited cases, the Court must consider the second argument Plaintiffs' raise in support of their Motion to remand: That interpreting § 1441(b)(2) to permit snap removal by a forum defendant would be contrary to the legislative intent of the statute, and would thus produce an absurd result.

### B. Absurdity/Legislative Intent

As the Fifth Circuit has explained, "[w]hen the plain language of a statute is unambiguous and does not lead to an absurd result, our inquiry begins and ends with the plain meaning of that language." *Texas Brine*, 955 F.3d at 486 (quoting *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 630 F.3d 431, 438 (5th Cir. 2011)). In other words, if the result of applying a statute is obvious based on its plain text, and that result is not absurd, a court cannot, and must not, go beyond the text of that statute and consider other factors such as legislative intent.

As discussed *supra*, the Fifth Circuit in *Texas Brine* found § 1441(b)(2) to be unambiguous and concluded that, by its plain meaning, "Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law[.]" *Id.* (quoting *Gibbons*, 919 F.3d at 705). Although the *Texas Brine* court held so in the context of a snap removal by a non-forum defendant, this holding applies equally to snap removal by a forum defendant. *See also Gibbons*, 919 F.3d at 705 (finding the text of § 1441(b)(2) to be unambiguous and holding that it permits snap removal

8

by a forum defendant); *Encompass Insurance Company*, 902 F.3d at 152 (same). Thus, under *Texas Brine*, § 1441(b)(2) is unambiguous and, by its plain meaning, does not prohibit snap removal by a forum defendant. *See also Chastain*, 2021 WL 5578443, at *5 ("This Court has determined that the text of 28 USC § 1441(b)(2) is unambiguous. Applying the text as written by Congress, and since the sole defendant—which happens to be a forum defendant—was not properly served, removal was procedurally proper."); Hvamstad, 2022 WL 17086690, at *3 (stating that "the plain text of § 1441(b)(2) allows a defendant to remove a case to federal court, so long as no forum defendant has been served, and the court otherwise can assume jurisdiction" and holding thereby that removal by a forum defendant was proper).

Having so determined, this Court must consider whether § 1441(b)(2)'s plain meaning creates an absurd result. As explained by the Fifth Circuit in *Texas Brine*, "[i]n statutory interpretation, an absurdity is not mere oddity. The absurdity bar is high, as it should be. The result must be preposterous, one that 'no reasonable person could intend.'" 955 F.3d at 486 (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 237 (2012)). In holding that snap removal by non-forum defendants was not an absurd result of § 1441(b)(2)'s plain-meaning interpretation, the *Texas Brine* court again relied heavily on the Second and Third Circuit's determinations that § 1441(b)(2)'s allowance of removal by *forum* defendants was not an absurd result. *See id.* at 486–87. In *Gibbons*, the Second Circuit rejected the plaintiff's argument, also raised by Plaintiffs in the instant Motion, that applying the plain text of § 1441(b)(2) produces the absurd result of "allow[ing] a home-state defendant to use an exception meant to protect defendants from unfair bias (in the courts of a plaintiff's home state) and language designed to shield them from gamesmanship (in the form of fraudulent joinder) to remove a lawsuit to federal court." 919 F.3d at 706. As that court explained:

9

> [W]hile it might seem anomalous to permit a defendant sued in its home state to remove a diversity action, the language of the statute cannot be simply brushed aside. Allowing a defendant that has not been served to remove a lawsuit to federal court does not contravene Congress's intent to combat fraudulent joinder. In fact, Congress may well have adopted the "properly joined and served" requirement in an attempt to both limit gamesmanship and provide a bright-line rule keyed on service, which is clearly more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant. Absurdity, then, cannot justify a departure from the plain text of the statute.

*Id.* (internal citations and quotations removed). Similarly, in *Encompass Insurance Company*, the Third Circuit rejected the plaintiff's argument that it was "inconceivable" that Congress intended the "properly joined and served" language in § 1441(b)(2) to permit a forum state defendant to remove an action by delaying formal service of process, explaining:

> This argument is unavailing. Congress'[s] inclusion of the phrase "properly joined and served" addresses a specific problem — fraudulent joinder by a plaintiff — with a bright-line rule. Permitting removal [by a forum defendant] does not contravene the apparent purpose to prohibit that particular tactic. Our interpretation does not defy rationality or render the statute nonsensical or superfluous, because: (1) it abides by the plain meaning of the text; (2) it envisions a broader right of removal only in the narrow circumstances where a defendant is aware of an action prior to service of process with sufficient time to initiate removal; and (3) it protects the statute's goal without rendering any of the language unnecessary. Thus, this result may be peculiar in that it allows [the removing forum defendant] to use pre-service machinations to remove a case that it otherwise could not; however, the outcome is not so outlandish as to constitute an absurd or bizarre result.

902 F.3d at 154–55; *see also Texas Brine*, 955 F.3d at 486 (discussing the above language in *Gibbons* and *Encompass Insurance Company*, agreeing that "a reasonable person could intend the results of the plain language" of § 1441(b)(2), and therefore holding that "[t]he plain-language reading of the forum-defendant rule as applied in this case does not justify a court's attempt to revise the statute.")

This Court agrees. Reading § 1441(b)(2) to permit snap removal by forum defendants may be "peculiar" in light of the legislative purposes of the removal statute—i.e., to protect foreign

10

defendants from unfair bias resulting from being forced to litigate in the courts of a plaintiff's home state and to prevent plaintiffs from avoiding removal by improperly joining forum-state defendants whom they do not intend to actually serve or pursue. But this is the result demanded by the plain language of § 1441(b)(2), and it is not a "preposterous" result that "no reasonable person could intend." *See Texas Brine*, 955 F.3d at 486. Thus, this result is not absurd.

Having held that interpreting § 1441(b)(2) according to its plain language does not lead to an absurd result, "our inquiry begins and ends with the plain meaning of that language[,]" and this Court cannot consider Plaintiffs' additional arguments regarding legislative intent. *Texas Brine*, 955 F.3d at 486. Additionally, having rejected Plaintiffs' arguments as to the absurdity of permitting removal by forum defendants and under *Levy*, this Court finds no reason to distinguish this case from *Baele*, 2023 WL 4882818; *Miller*, 2022 WL 139772; *Hvamstad*, 2022 WL 17086690; or *Chastain*, 2021 WL 5578443. As held in those cases by other federal district courts sitting in Louisiana, the Forum Defendant Rule does not prohibit snap removal by a forum defendant. Thus, Plaintiff's Motion to Remand this matter back to Louisiana state court must be denied.

### III.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion to Remand, R. Doc. 11, is **DENIED**.

New Orleans, Louisiana, this 6th day of November, 2023.

Greg Gerard Guidry
United States District Judge